USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:_____
DATE FILED: 5/9/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
The Alphas Company of New York Inc. et al., :
                                        Plaintiffs :

1:14-cv-00145 (ALC)

**MEMORANDUM OPINION**

-against-

The Hunts Point Terminal Produce Cooperative, Inc. et al.,

                                        Defendants.
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

This action arises out of a wholesale food distribution business formerly operated by the Alphas Company of New York, Inc. (the "Alphas Company" or "Company") at the Hunts Point Terminal Produce Market (the "Market"). Plaintiff Peter Alphas, on behalf of the Company and himself, brings this action against the cooperative who operates the Market, the union who provides employees to the cooperative members, and various attorneys employed by the cooperative and union, who engaged in litigation against Alphas and the Company. Alphas alleges two federal causes of action, a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and conspiracy to violate RICO, and eight state law claims.

Defendants can be divided into five groups. The "Union Defendants" are the Local 202 of the International Brotherhood of Teamsters and five union representatives. Fifth Am. Compl. ¶¶ 29-34. The "Hunts Point Defendants" are the Hunts Point Terminal Produce Cooperative Association, Inc. ("Hunts Point Co-op"), which operates the Market, and its board members, officers, and agents. Id. ¶¶ 11-28, 36, 40-41. The "Attorney Defendants" are Michael Shapiro, general counsel to Hunts Point Co-op; Julian S. Kaufman, counsel to Hunts Point Co-op; and the

Law Offices of Rogers, Wughalter, and Kaufman, a law firm retained by Hunts Point Co-op. *Id.* ¶¶ 35, 37-38. The final Defendant is Thomas J. Bia ("Bia"), a New York City Marshal. *Id.* ¶ 39.

All Defendants have asserted a variety of grounds in support of the dismissal of the amended complaint. On March 31, 2017, this Court granted all of the Defendants' motions to dismiss. The Court now sets forth the reasons why.

## FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint, as well as documents of which the Court may take judicial notice.[1]

Peter Alphas is the sole shareholder of the Alphas Company of New York Inc., a domestic corporation that conducts wholesale food packing and distribution around New York City. The Alphas Company is currently in bankruptcy and under the control of a trustee for the United States Bankruptcy Court. *Id.* ¶ 9. In 2001, Hunts Point Co-op and the Alphas Company entered into a lease for the Alphas Company's use and occupancy. *Id.* ¶ 47. The Alphas Company was a success until Alphas had to hire union employees due to the harassment by the Union Defendants. Thereafter in 2005, Alphas terminated the employment of all but one union member from the Alphas Company, and the Union Defendants responded by pressuring Alphas into hiring more union employees or selling the Alphas Company's leased units to a "crony of

---

[1] In deciding motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts may consider facts as asserted within the complaint, as well as matters of which judicial notice may be taken. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Judicial notice may be taken of proceedings in other courts. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Defendant[']s at an undervalued amount." *Id.* ¶ 53. Alphas had to seek additional capital to keep the Company afloat but was unable to procure any financing due to statements made by one or more of the Defendants about the creditworthiness, competence, and character of Alphas. Consequently, Alphas had to invest his own personal funds to keep the Alphas Company afloat.

All the while, the Alphas Company was engaged in litigation with Hunts Point and Union Defendants and non-parties related to the eviction of Alphas Company from the Market, its failure to make payments into the union's "Pension & Health Fund," and its improper withdrawal from the union. *Id.* ¶¶ 59, 61, 63, 72, 73, 85, 76. In the midst of the litigation pertaining to the eviction of the Alphas Company, around May 6, 2013, certain of the Hunts Point and Union Defendants dumped all inventory and personal property from the leased units into the trash and blocked Alphas and the Company employees from accessing the leased units. *Id.* ¶ 78. Defendant Bia was "induced by the" other Defendants into taking Alphas' or the Alphas Company's property. *Id.* ¶ 100. The Defendants' actions—allegedly illegal eviction of Plaintiff, barring access to the Company's leased properties, dumping of property, litigation against Alphas and the Company, and discouragement and prevention of customers, suppliers, and potential financiers from doing business with Alphas and the Company—were all done to pressure Alphas to sell his leased units in the cooperative or run a union shop.

On March 4, 2014, the Alphas Company commenced a proceeding under Chapter 11 of the Bankruptcy Code. *See in re The Alphas Company of New York, Inc.,* 1:14-bk-10510 (Bankr. S.D.N.Y.) ECF No. 1. The Alphas Company later sought to convert and did convert the bankruptcy proceeding to one under Chapter 7. *Id.* ECF Nos. 22, 29. On June 5, 2014, the

Trustee, John Pereira, was appointed to take charge of the Alphas Company's affairs. *Id.* ECF No. 30.

## PROCEDURAL HISTORY

Alphas and the Company commenced this action on January 9, 2014. Alphas subsequently discharged his attorneys and began representing himself *pro se*. Alphas has amended the complaint multiple times and all Defendants have moved to dismiss the complaints multiple times. In addition, there have been multiple joint stipulations of dismissal with or without prejudice between John S. Pereira, as Chapter 7 trustee for the Alphas Company, and certain defendants. *See* ECF Nos. 161, 239, 241. After the last stipulation that was filed on August 18, 2016, ECF No. 241, the Court requested the parties amend the pleadings, motions papers, opposition papers, and reply papers as necessary to reflect the status of the case, while terminating all pending motions. ECF No. 242.

Subsequently, Alphas filed the Fifth Amended Complaint ("FAC"), which was identical to the Fourth Amended Complaint, and all the Defendants renewed their motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and to the extent applicable to certain defendants, 12(b)(5).

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

To decide the motion, the court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks omitted). The Court may also consider "matters of which judicial notice may be taken." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions." *Johnson v. Levy*, 812 F.Supp.2d 167, 176 (E.D.N.Y. 2011); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 111 (2d Cir. 1991).

## DISCUSSION

### A. CIVIL RICO

18 U.S.C. 1964(c) creates a private right of action for RICO violations. 18 U.S.C. § 1964(c). The RICO statute provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a civil RICO claim, the plaintiff must allege: "(1) conduct, (2) of an enterprise, (3) through a pattern (4) [consisting of two or more predicate acts] of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotation marks omitted).

Before a RICO claim can be established, the plaintiff must demonstrate a cause of action under civil RICO or RICO standing. In order to show such standing, plaintiff must plead: "(1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003), *abrogation on other grounds recognized by Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016). In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014), the Supreme Court clarified that standing under a statute is not in fact a standing issue that implicates subject matter jurisdiction but rather the issue of whether a particular plaintiff "has a cause of action under the statute." *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (internal quotations marks omitted). Thus, Defendants' motions to dismiss for lack of standing should

have been brought under Rule 12(b)(6), not 12(b)(1).[2] *See Albunio v. Int'l Safety Group, Inc.*, 15-CV-152 (VEC), 2016 WL 1267795, *3 (S.D.N.Y. 2016) (treating defendant's standing argument as one that goes to the merits of plaintiffs' RICO claims, rather than as one that challenges plaintiffs' standing for jurisdictional purposes).

Defendants argue that not only has Alphas failed to state a claim under the RICO statute, but that he does not have standing to bring this RICO action in his individual capacity. Specifically, Defendants principally argue that Alphas' RICO claims are based on alleged racketeering activities directed at and causing harm to the Alphas Company and thus any harm to Alphas is not recoverable in a civil RICO suit.

Although Alphas alleges in his complaint that he personally suffered damages "separate and distinct from the company," FAC ¶ 90, these injuries are due to his being the sole shareholder of the Alphas Company. It is well settled that "[a] shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock. This is true even when the plaintiff is the sole shareholder of the injured corporation." *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) (internal citations omitted). Under the third prong of the standing test, proximate causation, injuries to the shareholder is generally derivative of the injury to the corporation, and so Alphas cannot show that any RICO violation caused him direct injury. *See id.*

---

[2] Nonetheless, the Court notes that the standard of review for 12(b)(1) motions is "substantively identical" to Rule 12(b)(6) motions. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003). The key difference is that the movant bears the burden of proof on a 12(b)(6) motion but the plaintiff invoking the court's jurisdiction bears the burden on a 12(b)(1) motion. *Id.*

The same logic applies to those injuries that Alphas alleges are a result of his personal guarantee of loans to the Alphas Company or retaining of counsel in connection with his interest in the Alphas Company. Obligors or creditors, too, do not have standing under RICO because their injury is also derivative of that to the corporation and is not proximately caused by RICO violations. *See id.* at 1130. The legal fees incurred by Alphas for his liabilities to outside parties related to the Alphas Company and his interest in the corporation are also derivative damages, or otherwise too attenuated.

To the extent that Alphas' injuries can be generously construed to be distinct from the harm suffered by the Alphas Company, those injuries are not, in fact, injuries to "business or property." Alphas alleges damages in lost income and in losing his PACA license to conduct business and find further employment (FAC ¶ 90(d),(e)), but these injuries are "too speculative to constitute an injury to business or property." *See Kimm v. Chang Hoon Lee and Champ, Inc.*, 196 Fed. App'x 14, 16 (2d Cir. 2006). Further, the legal fees incurred by Alphas for his liabilities to outside parties related to the Alphas Company and his interest in the corporation do not meet the causation requirements of RICO standing, *see id.*, but are also too speculative to constitute an injury. Alphas also alleges that he suffered severe emotional and mental distress (FAC ¶ 90(j)), losses in terms of a lower personal credit score (*id.* ¶ 90(f)), and injury to his reputation and goodwill (*id.* ¶ 90(i)), but these are all not injuries within the meaning of RICO. *See, e.g., Angermeir v. Cohen*, 14 F.Supp.3d 134, 152 (S.D.N.Y. 2014) (emotional distress and mental anguish held not to be an injury to business or property); *Macauley v. Estate of Nicholas*, 7 F.Supp.3d 468, 480 (E.D. Pa. 2014) (loss of creditworthiness held not an injury to business or

property), *Kimm*, 196 Fed. App'x at 16 ("[G]eneralized reputational harms...are too speculative to constitute an injury to business or property.").

Finally, Alphas also complains about the loss of various business equipment and personal belongings such as pictures, letters, and collectibles. FAC ¶ 90(a). To the extent that the lost or damaged property belonged to the Company, Alphas cannot recover for it. For property loss personal to Alphas, Alphas cannot show that his loss was directly caused by a predicate act under the third element of the standing test. The Supreme Court has clarified that the injury from a violation of Section 1962(c) "necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern..." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). The cause of the property loss or damage does not flow from any of the predicates acts---extortion, mail fraud, wire fraud, or interference with commerce by threats or violence---but rather from the eviction of Alphas Company from the leased property (FAC ¶ 78), which is a separate and distinct act. *See Anza*, 547 U.S. at 457-58 (plaintiff lacked standing when the cause of his harm was the distinct act of plaintiff's competitor's offering of lower prices to customers and not the alleged RICO violation of defrauding the government, which allowed the competitor to undercut plaintiff's prices). Eviction and the attendant property loss or damage is not listed as any of the RICO predicate acts. *See* 18 U.S.C. § 1961(1). Thus, the property loss and damage do not satisfy the causation element under RICO.

This conclusion is reinforced by the policies that underlie the causation requirement in RICO cases, specifically the risk of duplicative recoveries. *See Anza*, 547 U.S. at 459. Here, the Alphas Company is in bankruptcy and has a trustee appointed, who has appeared in this action and has settled claims with certain of the defendants. Thus, for Alphas, who is the sole

9

shareholder of his company, to move forward with this suit would mean that he could potentially recover twice. This is what the proximate causation requirement is designed to prevent. Thus, Alphas' RICO claim is dismissed.

## B. RICO CONSPIRACY

Alphas also brings a RICO conspiracy claim under 18 U.S.C. § 1962(d). This section provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c), of this section." To have standing to bring a RICO conspiracy claim, the plaintiff must demonstrate that the injury is caused by overt acts that are also § 1961 predicate acts and not upon any and all overt acts furthering a RICO conspiracy. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990); *see also First Capital Asset Mgmt, Inc. v. Brickelbush, Inc.*, 218 F.Supp.2d 369, 384 (S.D.N.Y. 2002) ("To have standing to bring a RICO conspiracy claim, the plaintiffs must demonstrate that at least one Section 1961 predicate act taken in furtherance of the RICO conspiracy proximately caused injury to their business or property.") As the above RICO standing analysis shows, Alphas has failed to allege any injury that was proximately caused by any predicate acts by the Defendants and thus cannot bring any RICO conspiracy claims.

## C. STATE LAW CLAIMS

In addition to his RICO and RICO conspiracy claims, Alphas brings the following claims against all Defendants: fraud, tortious interference with contract/business relations and economic opportunity, trespass to chattels, civil conspiracy, defamation, and intentional infliction of emotional distress, and breach of fiduciary duties. Against Attorney Defendants, Alphas alleges violations of Judiciary Law § 487, which states an attorney who is "guilty of any deceit or

collusion, or consents to any deceit or collusion, with intent to deceive the court or any party…[i]s guilty of a misdemeanor[.]" N.Y. Judiciary Law § 487 (McKinney 1965). Federal courts should generally decline to exercise supplemental jurisdiction if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's "federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988); *see also* 28 U.S.C. § 1367(c). As discussed above, the Court has dismissed Plaintiff's federal claims. Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice to refiling in state court.

## CONCLUSION

For the foregoing reasons, the Court affirms its granting of all Defendants' motions to dismiss.

Dated: May 9, 2017
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**

11